UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS CASTRO, CDCR #V33841,<br><br>                              Plaintiff,<br><br>   vs.<br><br>CONNIE GIPSON, J. HILL, AMADOR, D. EUSTQUIO, SEGOVIA, WINGO, SURKHI, VILORIA, GONZALEZ, MOECKLY, MOSELEY, SMITH,<br><br>                              Defendants. | Case No.: 3:24-cv-00789-DMS-DEB<br><br>**ORDER (1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS;**<br><br>**(2) DENYING MOTION FOR RECONSIDERATION AS MOOT; AND**<br><br>**(3) DISMISSING COMPLAINT WITHOUT PREJUDICE FOR FAILURE TO COMPLY WITH FED. R. CIV. P. 8** |

## I.    INTRODUCTION

On May 1, 2024, Plaintiff Dennis Castro, currently incarcerated at Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, and proceeding pro se, filed a civil rights complaint pursuant to 42 U.S.C. § 1983. *See* ECF No. 1. On May 9, 2024, the Court dismissed the action because Plaintiff failed to pay the filing fee or move to proceed *in forma pauperis* ("IFP"). ECF No. 4. The Court gave Plaintiff an opportunity to have his case reopened by either paying the $405 filing fee or filing a properly supported

IFP motion. Plaintiff subsequently filed a Motion to Proceed IFP [ECF No. 5] and a Motion for Reconsideration [ECF No. 6].

For the reasons discussed below, the Court grants Plaintiff's request to proceed IFP, denies his motion for reconsideration as moot, and dismisses the Complaint without prejudice for failure to comply with Rule 8 of the Federal Rules of Civil Procedure.

## II.   MOTION TO PROCEED IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $405.[1] *See* 28 U.S.C. § 1914(a). A party may initiate a civil action without prepaying the required filing fee if the Court grants leave to proceed IFP based on indigency. 28 U.S.C. § 1915(a); *Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007).

To proceed IFP, plaintiffs must establish their inability to pay by filing an affidavit regarding their income and assets. *See Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015). Prisoners seeking to establish an inability to pay must also submit a "certified copy of the [prisoner's] trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. §§ 1915(b)(1) & (4). Prisoners who proceed IFP must repay the entire fee in installments regardless of whether their action is ultimately dismissed. 28 U.S.C. § 1915(b)(2); *Bruce v. Samuels*, 577 U.S. 82, 84 (2016).

In support of his IFP Motion, Plaintiff has provided a copy of his trust account statement and prison certificate authorized by an accounting officer. *See* ECF No. 5 at 4–

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $55. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023)). The additional $55 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

6. During the six months prior to filing suit, Plaintiff had an average monthly balance of $511.49, average monthly deposits of $180.84, and an available account balance of $256.22 at the time he filed suit. *Id*. at 4. Accordingly, the Court **GRANTS** Plaintiff's IFP motion and assesses an initial partial filing fee of $102.30 pursuant to 28 U.S.C. § 1915(b)(1). However, *this initial fee need be collected only if sufficient funds are available in Plaintiff's account at the time this Order is executed*. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on "failure to pay . . . due to the lack of funds available to him when payment is ordered."). Pursuant to 28 U.S.C. § 1915(b)(2), the CDCR or any agency later having custody must forward payments to the Clerk until the $350 statutory fee is paid in full.

### III.   MOTION FOR RECONSIDERATION

Shortly after filing the IFP motion discussed above, Castro filed a Motion for Reconsideration, in which he asks the Court to "reconsider" its May 9, 2024 dismissal in light of his subsequent request to proceed IFP. ECF No. 6. But as discussed above, the case has been reopened and his IFP motion has been granted. Therefore, the Court DENIES the Motion for Reconsideration as moot.

### IV.   SCREENING PURSUANT TO 28 U.S.C. § 1915(e) AND § 1915A(b)

#### A.   Standard of Review

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a preliminary screening pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b). Under these statutes, the Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion found frivolous, malicious, failing to state a claim, or seeking damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010)

1  (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is to 'ensure that the targets of frivolous and malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citation omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that § 1915A screening "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)").

A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted); *Wilhelm*, 680 F.3d at 1121. A complaint fails to state a claim if it lacks a "cognizable legal theory" or "sufficient facts . . . to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  And while the court "ha[s] an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)), it may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

Title 42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (internal quote marks

omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

**B.   Factual Allegations**

Although the facts alleged in the Complaint are somewhat vague, the impetus for Plaintiff's claims appears to be a cell search that took place on August 18, 2023, while Castro was an inmate at RJD. Castro alleges that officers with RJD's Investigative Services Unit ("ISU") searched his cell and found a contraband cellular phone and an improvised weapon. ECF No. 1 at 11. It appears that upon recovering the cell phone, RJD officials searched the phone's contents (including text messages) and found evidence that Castro has been smuggling drugs into the prison with the assistance of an outside visitor. *Id.* at 17. Castro was subsequently charged via Rule Violation Report ("RVR") with conspiracy to distribute a controlled substance. *Id.* at 8.

Shortly after the search, Plaintiff was removed from his cell and presumably placed in segregation. *Id.* at 9. Castro alleges several items of his personal property were collected from his cell and ultimately never returned. The lost items include prescription glasses, a battery charger, an MP3 player, two pairs of athletic shoes and a "customized Bible." *Id.*

On January 18, 2024, a hearing on the RVR was held and Plaintiff was found guilty of conspiracy to distribute a controlled substance within the prison. *Id.* at 16. Castro alleges the RVR was based on "false evidence" and all twelve Defendants were "engaged in [a] conspiracy to use Plaintiff as a scapegoat" by accusing him of "smuggling drugs into the prison that resulted in multiple overdoses and an inmate's death. *Id.* at 7, 17. As a result of the RVR determination, Castro was "deprived. . . of 151 days [of] custody credits." *Id.* at 7, 16.

On March 1, 2024, Castro alleges Defendant Viloria conducted another cell search in retaliation for "comments [Castro] made during [the August 18, 2023] cell search" and subsequently "exercising his right to file administrative appeal[s]." *Id* at 12. As a result of

the March 1, 2024 cell search, several items belonging to Castro were "confiscated," including a radio and television. *Id.* at 12. Plaintiff was then strip searched because the "scanning machine was broken." *Id.* Viloria made Castro bend over at the waist, spread his cheeks and cough. Castro alleges this was against "procedure" and was done for Viloria's sexual gratification. *Id.* at 12–13.

Plaintiff alleges that on March 7, 2024, Viloria "attempted to assault [him] in retaliation for filing [administrative appeals]" by sending three ISU officers to "present [a] ruse" about needing to conduct an "emergency interview and [an] unknown location." *Id.* at 13. Castro alleges the three officers had aggressive body language and intended to injure him but fails to provide any facts as to what, if anything, actually transpired during the interview. *See id.* Plaintiff also states he filed at least eight administrative appeals related to the initial cell search and the alleged loss of his property, all of which were improperly denied as part of the overarching conspiracy against him. *Id.* at 14–15.

Castro names twelve Defendants in his Complaint: Connie Gipson, J. Hill, Amador, Eustaquio, Segovia, Wingo, Surkhi, Viloria, Gonzalez, Moeckly, Moseley, and Smith. *See id.* at 6–16. He seeks $200,000 in combined compensatory and punitive damages from each individual defendant. *Id.* at 22.

C.  **Discussion**

    1.  **Rule 8**

The Court finds the Complaint must be dismissed for failure to comply with Federal Rule of Civil Procedure 8. Rule 8 requires that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (alteration in original).

Rule 8 may be violated when a pleading "says too little," or when it "says too much." *Knapp v. Hogan*, 738 F.3d 1106, 1109 (9th Cir. 2013). While Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at

555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (citations omitted).  Moreover, a complaint that is too verbose, long, confusing, redundant, irrelevant, or conclusory may be dismissed for failure to comply with Rule 8. *See Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1058–59 (9th Cir. 2011) (collecting cases upholding dismissals for those reasons). The purpose of Rule 8(a) is to ensure that a complaint "fully sets forth who is being sued, for what relief, and on what theory, with enough detail to guide discovery." *McHenry v. Renne*, 84 F.3d 1172, 1177 (9th Cir. 1996).

Here, Plaintiff's Complaint violates Rule 8 because it says both too little and too much. *See Knapp*, 738 F.3d at 1109. The body of the Complaint itself lacks sufficient factual allegations to support Castro's individual claims. It is comprised primarily of conclusory allegations against Defendants and contains only sparse specific factual allegations.[2] For instance, while Castro lists Defendants individually, he repeats the same legal bases as to all twelve, stating that each one "violated [his] rights under First and Fourteenth Amendments of the U.S. Constitution and *Monell* liability while in [their] official and individual capacities." *See generally,* ECF No. 1. These allegations, however, are rarely followed by specific facts related to the individual defendant. *See e.g.*, *id.* at 6–7, 10–11, 14–15. For example, Castro makes sweeping claims that all Defendants were involved in a "conspiracy" against him but fails to specify how each individual defendant was involved in the purported conspiracy. In sum, the Court finds the Complaint lacks enough detail to support Plaintiff's claims for relief or to guide discovery as to the named Defendants. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555, 557.

---

[2] In a few portions of the Complaint, Plaintiff does provide some specific facts, particularly as to Defendant Viloria. *See* ECF No. 1 at 12–13. However, a "dismissal for failure to comply with Rule 8 does not depend on whether the complaint is wholly without merit." *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996).

In addition, to the extent Castro seeks to rely on facts contained in the numerous exhibits attached to his Complaint, he has also violated Rule 8 by providing "too much." *See Knapp*, 738 F.3d at 1109. Here, it appears Plaintiff seeks to provide the relevant facts by simply attaching and referencing numerous exhibits to his Complaint. *See* ECF No. 1-2. While Plaintiff may refer to and attach exhibits as necessary to *support* factual allegations contained in his Complaint, the Court will not sift through multiple exhibits to tease out the factual bases for Plaintiff's individual claims against individual defendants.[3] *See Cantu v. Garcia*, 2010 WL 2605336, at *2 (E.D. Cal. 2010) ("[S]ifting through . . . prison documents and formulating claims on Plaintiff's behalf crosses the line between liberal construction and advocating on Plaintiff's behalf."); *Vera v. Warden*, 2023 WL 5278813, at *1 (E.D. Cal. 2023). ("Attaching exhibits to a complaint . . . is not the proper procedure for admitting evidence for the purpose of proving Plaintiff's allegations."); *Quezada v. Sherman*, 2018 WL 6111289, at *3 (E.D. Cal. Nov. 2018) (stating a plaintiff "must state the factual evidence derived from the exhibit in his allegations and may only cite to the exhibit to bolster/support his factual allegations").

As such, the Court DISMISSES the Complaint without prejudice and with leave to amend, for failure to comply with Federal Rule of Civil Procedure 8.

### 2. Leave to Amend

Should Plaintiff choose to file an amended complaint, he should make clear the nature and grounds for each claim, and clearly and concisely explain the specific factual basis for each individual defendant's liability—in compliance with Rule 8 of the Federal Rules of Civil Procedure. In doing so, Plaintiff should consider the following legal standards and discussion of the pleading deficiencies the Court could identify in his Complaint, as outlined below.

---

[3] Furthermore, the Court notes that exhibits and evidence are not required at this stage of the litigation. For purposes of determining whether Plaintiff states a claim that is plausible on its face and can survive a Rule 12(b)(6) motion to dismiss, courts accept factual allegations as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017).

### a. Official and Individual Capacity Claims

In his Complaint, Plaintiff names all twelve Defendants in both their individual and official capacities. There is a distinction between the two, particularly when seeking money damages. The Eleventh Amendment bars a prisoner's section 1983 claims seeking money damages against state actors sued in their official capacities. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989). Plaintiffs, however, may seek damages against a state official in his or her individual capacity.[4] *See Cornel v. Hawaii*, 37 F.4th 527, 531 (9th Cir. 2022) (stating that "plaintiffs may seek damages against a state official in his personal capacity"); *Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016) (explaining the Eleventh Amendment does not bar claims for damages against state officials in their personal capacities). Thus, to the extent Plaintiff seeks money damages from Defendants in their official capacities, the Complaint fails to state a claim.

### b. Linkage and Supervisory Liability

To state a claim under § 1983, a plaintiff must show a causal connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Rizzo v. Goode*, 423 U.S. 362, 373–75 (1976). A person may be liable under section 1983 for an affirmative act, participation in another's affirmative acts, or omission of an act that he is legally required to do, causing the deprivation of a constitutional right. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). Thus, to state a claim under § 1983, the plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676–77. This requires the presentation of factual allegations sufficient to state a plausible claim for relief as to each individual defendant. *Id.* at 678–79.

///

---

[4] Injunctive relief, however, lies only as to the individual defendant who can provide the demanded remedy, or who can appropriately respond to the challenged law or policy. *See Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013).

In addition, § 1983 liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676–77. Supervisory personnel may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Thus, to the extent Plaintiff alleges Defendants Gipson, Hill, Amador, Segovia are liable based only on their status as supervisors (*see* ECF No. 1 at 6–7), he fails to state a claim.

        c.      First Amendment

To state a First Amendment retaliation claim, a plaintiff must allege he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security. *See Barnett v. Centoni*, 31 F.3d 813, 81–16 (9th Cir. 1994) (per curiam). In meeting this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right. *See Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). He must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct. *See Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000). Thus, a claim for retaliation requires a showing that: (1) prison officials took adverse action against the inmate; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose. *Rhodes v. Robinson*, 408 F.3d 559, 569 (9th Cir. 2005). As such, in amending his Complaint, Plaintiff must allege specific facts which show how each individual Defendant took adverse action against him. In addition, he must also plausibly allege the action was taken "because" of his administrative grievances and/or internal complaints about the August 18, 2023 search and subsequently "chilled" his speech.

        d.      Fourteenth Amendment

In his Complaint, Castro appears to allege he was denied due process when he was found guilty of the RVR based on "false evidence," resulting in a loss of 151 days of

custody credits. *See e.g.*, ECF No. 1 at 6. A prisoner is entitled to certain enumerated due process protections when charged with a disciplinary violation. *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003) (citing *Wolff v. McDonnell*, 418 U.S. 539, 564–571 (1974)). "Such protections include the rights to call witnesses, to present documentary evidence and to have a written statement by the fact-finder as to the evidence relied upon and the reasons for the disciplinary action taken." *Id*. at 1077–78. However, these protections adhere only when the disciplinary action implicates a protected liberty interest either by exceeding the sentence in "an unexpected manner" or where an inmate is subject to restrictions that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Where no such protected liberty interest is at stake, due process requires only that "the findings of the prison disciplinary board (be) supported by some evidence in the record." *Superintendent v. Hill*, 472 U.S. 445, 454–55 (1985).

In any case, if the loss of custody credits arising from the disciplinary action necessarily affects the duration of Plaintiff's sentence, as he appears to allege in his Complaint, the claim is barred unless he can show the action was later invalidated. *See Heck v. Humphrey*, 512 U.S. 477, 480–82 (1994) (holding that where success on a prisoner's § 1983 action would necessarily impact the validity of a conviction or duration of a sentence the prisoner must first invalidate the underlying conviction or sentence); *Edwards v. Balisok*, 520 U.S. 641 (1997) (applying *Heck's* favorable termination requirement to a prisoner's § 1983 action alleging deprivation of custody credits). And here, Plaintiff has failed to allege his RVR has been invalidated.

In addition, to the extent Castro claims his RVR was based on "false evidence," there is no due process right to be free from false disciplinary charges. *Buckley v. Gomez*, 36 F.Supp.2d 1216, 1222 (S.D. Cal. 1997), aff'd, 168 F.3d 498 (9th Cir. 1999) (concluding allegations that officials falsely charged an inmate with a rule violation failed to state a due process claim because "a prisoner does not have a constitutional right to be free from wrongfully issued disciplinary reports").

e. *Monell* Liability

Castro alleges each Defendant (all of whom appear to be CDCR employees) is subject to "*Monell* liability." *See* ECF No. 1 at 6. Under *Monell*, "local government units which are not considered part of the State for Eleventh Amendment purposes" can be held liable for violations of Section 1983. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 n. 54 (1978). *Monell* does not apply to state agencies, such as the California Department of Corrections and Rehabilitation because, as discussed above, such entities are entitled to immunity under the Eleventh Amendment. *See Will*, 491 U.S. at 71; *see also Tingirides v. California Dep't of Corr. & Rehab*, 2020 WL 4904661, at *10 (C.D. Cal. 2020) ("The *Monell* doctrine does not apply to . . . state official[s], sued in [their] individual capacity[ies.]").

f. Conspiracy

Throughout his Complaint, Castro states Defendants "engaged in same [sic] conspiracy, and/or while committed alleged violations separate from same conspiracy." *See* ECF No. 1 at 7–11. To assert a conspiracy claim under Section 1983, a plaintiff must allege: "(1) the existence of an express or implied agreement among the defendant officers to deprive him of his constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement." *Ting v. United States*, 927 F.2d 1504, 1512 (9th Cir. 1991); *Crowe v. Cnty. of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010) ("[A] plaintiff must demonstrate the existence of an agreement or meeting of the minds to violate constitutional rights."). In doing so, a plaintiff must allege "specific facts to support the existence of the claimed conspiracy." *Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 929 (9th Cir. 2004); *see also Cuviello v. City & Cnty. of San Francisco*, 940 F. Supp. 2d 1071, 1098 (N.D. Cal. 2013) ("Plaintiffs do not allege any specific facts showing a unity of purpose among co-conspirators, the scope of the conspiracy, what role each Defendant had in the conspiracy, or how the conspiracy operated."). Here, Plaintiff references a "conspiracy" among Defendants to "use [him] as a scapegoat" but fails to allege sufficient facts as to each individual Defendant's participation and/or role in the purported conspiracy.

g. Loss of Property

Castro alleges Defendants Segovia, Wingo, Surkhi, and Viloria deprived him of his personal property. ECF No. 1 at 9–11. Prisoners have a protected interest in their personal property. *Hansen v. May*, 502 F.2d 728, 730 (9th Cir. 1974). However, a plaintiff has no due process claim based on the defendants' unauthorized deprivation of his personal property—whether intentional or negligent—if a meaningful state post-deprivation remedy for his loss is available. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984). California's tort claim process provides that adequate post-deprivation remedy. *Barnett v. Centoni*, 31 F.3d 813, 816–17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810–895) ("[A] negligent or intentional deprivation of a prisoner's property fails to state a claim under section 1983 if the state has an adequate post deprivation remedy."); *see also Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1120 (S.D. Cal. 2007). Here, Plaintiff has a state post-deprivation remedy available to him and as such cannot state a claim for deprivation of property. *Barnett*, 31 F.3d at 816–17.

## V. CONCLUSION AND ORDER

Accordingly, the Court:

1. **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 5).

2. **ORDERS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's trust account the $102.30 initial filing fee assessed, *if those funds are available at the time this Order is executed*, and forward whatever balance remains of the full $350 owed in monthly payments in an amount equal to twenty percent (20%) of the preceding month's income to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2).

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Jeff Macomber, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001, via U.S. Mail, or by forwarding an electronic copy to trusthelpdesk@cdcr.ca.gov.

4. **DISMISSES** the Complaint *sua sponte* in its entirety without prejudice for

failure to comply with Federal Rule of Civil Procedure 8.

5. **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to file an Amended Complaint which cures the deficiencies of pleading noted in this Order. Plaintiff's Amended Complaint must be complete by itself without reference to any previous version of his pleading; Defendants not named and any claims not re-alleged in the Amended Complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled"); *Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989). If Plaintiff fails to timely amend, the Court will enter a final Order dismissing this civil action. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED.**

Dated: September 6, 2024

Hon. Dana M. Sabraw, Chief Judge
United States District Court